# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:23-cv-00287-AGF |
| | ) | |
| MARTIN O'MALLEY,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This action is before the Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff George Harris was not disabled, and thus not entitled to supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f. For the reasons set forth below, the decision of the Commissioner will be reversed and the case remanded for further proceedings.

## BACKGROUND

The Court adopts the statement of facts contained in Plaintiff's brief (ECF No. 17-1), which the Commissioner has admitted and supplemented (ECF No. 19-1). Together, these statements provide a fair description of the record before the Court. Specific facts will be discussed as needed to address the parties' arguments.

Plaintiff, who was born on May 4, 1989, filed his application for benefits on June

---

[1] Martin J. O'Malley is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he is substituted for Acting Commissioner Kilolo Kijakazi as the Defendant in this suit.

15, 2020.  He alleged disability beginning June 15, 2020, due to suicidal ideation, attention deficit hyperactivity disorder (ADHD), obsessive compulsive disorder (OCD), anxiety, depression, bipolar disorder, mental breakdowns, and HIV.  Plaintiff's applications were denied at the administrative level and on reconsideration, and he thereafter requested a hearing before an Administrative Law Judge ("ALJ").

A telephonic hearing was held on December 22, 2021, at which Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified.  By decision dated March 23, 2022, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> He can maintain the attention required to perform simple tasks in a routine work setting. He can make simple work-related decisions. [Plaintiff] can perform work that is not at a fast pace such as on an assembly line but can stay on task and meet reasonable production requirements in an environment that allows for a flexible and goal-oriented pace. He can perform work requiring no more than occasional interaction with coworkers and no direct interaction with the public.

Tr. 23.

In making these findings, the ALJ considered the opinion evidence provided by Plaintiff's treating provider, counselor Kyle Brandt-Lubart, L.C.S.W., in both November and December of 2021[2]; agency medical consultant J. Coulter, Psy.D., who examined Plaintiff in September 2020; and agency medical consultants J. Edd Bucklew, Ph.D., and

---

[2]  Brandt-Lubart's opinion dated December 13, 2021, was affirmed by William Redden, M.D.  Tr. 579.

2

James Morgan, Ph.D., who did not examine Plaintiff but who provided administrative medical findings in October of 2020 and April of 2021, respectively, based on Plaintiff's medical records.

      Brandt-Lubart opined that Plaintiff had a marked restriction in his abilities to maintain necessary concentration, persistence, and pace; to adapt and manage himself; and to interact with others, as well as moderate limitations in certain areas of understanding, remembering, and applying information.  Tr. 576-77.  Brandt-Lubart further opined that Plaintiff could not work in proximity to coworkers without being distracted by them or distracting them, that Plaintiff was unable to consistently perform for supervisors without being insubordinate, and that Plaintiff was unable to perform in a setting with any contact with the public. Tr. 577-78.  Brandt-Lubart assessed a 21 to 30% reduction below average in Plaintiff's pace of production and concluded that Plaintiff would be absent, late to work, or need to leave work early three times a month or more.  Tr. 578.  To support this opinion, Brandt-Lubart cited Plaintiff's intense mood dysregulation, periods of severe depression with low mood, suicidal thoughts, inability to get out of bed, low appetite, avoidance, hypervigilance, and reexperiencing secondary to PTSD, noting that "[t]he combination of [Plaintiff's] mental illness diagnoses make it difficult for him to function with any level of consistency."  Tr. 579.

      The ALJ concluded that these findings were not persuasive, as they were unsupported by and inconsistent with the evidence of record.  The ALJ noted that while Brandt-Lubart reported weekly 60-minute sessions with Plaintiff since February of 2020,

the record did not reflect this frequency of treatment, which according to the ALJ, reduced the persuasiveness of Brandt-Lubart's opinions.  Tr. 27-28, 479.

By contrast, the ALJ found more persuasive the less restrictive opinions rendered by the agency medical consultants, which indicated only mild limitations in many of the functional areas described above, and, at most, a moderate limitation in interacting with others.  Tr. 26.  The ALJ found that the consultants' opinions reflected the "essential dearth of objective support" for Plaintiff's subjective complaints and for more marked mental limitations.  *Id.*  The ALJ also relied on Dr. Coulter's report, issued after his psychological consultative examination of Plaintiff, that Plaintiff was malingering for gain, was an unreliable reporter, and possibly exaggerated his symptoms.  Tr. 21-26. The ALJ reasoned that, despite Plaintiff's report of severe mental impairment, he had a relatively conservative treatment history, including no history of psychiatric hospitalization.  *Id.*  Ultimately, the ALJ indicated in formulating Plaintiff's RFC that Plaintiff had slightly more severe limitations than those described by Dr. Coulter and the other state agency consultants, but less restrictive than those described by Plaintiff's treating provider, Brandt-Lubart.

Next, relying on the VE's testimony regarding a hypothetical person with Plaintiff's RFC and vocational factors (age, education, work experience), the ALJ found that Plaintiff remained able to perform his past relevant work as a cleaner, as well as certain medium jobs listed in the Dictionary of Occupational Titles ("DOT") (hand packager, material mover, and laundry worker) that were available in significant numbers

4

in the national economy. Accordingly, the ALJ found that Plaintiff was not disabled under the Social Security Act.

Plaintiff filed a timely request for review by the Appeals Council of the Social Security Administration and submitted additional evidence for consideration by the Appeals Council. The Appeals Council denied Plaintiff's request for review on January 5, 2023. Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision stands as the final agency action now under review.

Plaintiff argues that the ALJ erred by (1) failing to properly evaluate the medical opinion evidence, (2) failing to develop the record with respect to missing treatment records from Places for People (where Brandt-Lubart worked), and failing to support the RFC with substantial evidence. Plaintiff asks that the ALJ's decision be reversed and that he be awarded full benefits, or alternatively, that the case be remanded for further development of the record.

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

5

A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision.  If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner."  *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted).  Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice."  *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).  A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance.  *Id.*

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner has promulgated regulations, found at 20 C.F.R. § 416.920, establishing a five-step sequential evaluation process to determine disability.  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments.  A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities.  20 C.F.R. § 416.920(c).  A special technique is used to determine the severity of mental disorders.  This technique calls for rating the claimant's degree of limitations in four areas of functioning: understanding, remembering, or

6

applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.   20 C.F.R. § 416.920a(c)(3).

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations.   If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work.   If the claimant cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience.   *See, e.g.*, *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).   But even though the burden of production shifts to the Commissioner at step five, the burden of persuasion to prove disability remains on the claimant.   *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

**Failure to Develop the Record**

Because the Court finds that Plaintiff's second argument—the ALJ's failure to develop the record—warrants remand, the Court will discuss that argument first.   As Plaintiff notes and the Commissioner concedes, the case file explicitly states that the records from Places for People, where Plaintiff received treatment from counselor Brandt-Lubart, are incomplete.   Specifically, an invoice dated July 1, 2020, indicates that the organization charged for transmitting 69 pages of records, but only 57 pages are

contained in the relevant exhibit. Tr. 435-36. The exhibit thus contains the following disclaimer: "*Records behind this page are not complete. Calls to vendor to send all records have gone unanswered.*" Tr. 435 (emphasis added).

Plaintiff contends that the ALJ's failure to attempt to obtain these obviously missing records caused prejudice in that the ALJ then used the absence of such records to discount Brandt-Lubart's opinions finding more restrictive mental impairments. The Commissioner responds that it was Plaintiff's burden to submit evidence supportive of his disability claim, that the ALJ reasonably relied on Plaintiff's attorney's representation at the hearing that the record was complete, and that Plaintiff could and should have obtained and submitted these missing records either to the Appeals Council or to this Court.

"Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case. The ALJ's duty to develop the record extends even to cases like [this one], where an attorney represented the claimant at the administrative hearing." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). This is because the ALJ hearing is non-adversarial, and the Commissioner's goal should be "that deserving claimants who apply for benefits receive justice." *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994) (citation omitted).

"There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted). The

8

inquiry focuses on "whether [the plaintiff] was prejudiced or treated unfairly by how the ALJ did or did not develop the record; absent unfairness or prejudice, [courts] will not remand." *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993).

The ALJ's failure to attempt to obtain the missing records here renders the record inadequate for the purpose of determining whether Plaintiff is disabled and constitutes reversible error. Indeed, a primary reason for the ALJ's rejection of Brandt-Lubart's opinion and the ALJ's partial adoption of the agency medical consultants' opinions was that the record did not reflect the frequency of treatment reported by Brandt-Lubart and otherwise lacked sufficient objective support for Plaintiff's subjective claims of disabling mental limitations. But the ALJ's failure to obtain the missing records from Brandt-Lubart substantially undermines this evaluation. The information contained in these records could very well influence the ALJ's evaluation of the medical opinions, as well as the ALJ's credibility determination and RFC formulation. *See, e.g.*, *Farris v. Kijakazi*, No. 2:22-CV-00118-JM-PSH, 2023 WL 4269782, at *6 (E.D. Ark. June 29, 2023) (holding that the ALJ's failure to obtain missing treatment records undercut his rejection of medical opinions where the ALJ relied on the limited medical evidence as a reason for such rejection), *report and recommendation adopted,* No. 2:22-CV-00118-JM-PSH, 2023 WL 4561166 (E.D. Ark. July 17, 2023).

The Commissioner correctly notes that, during the hearing, Plaintiff's counsel told the ALJ that the record was complete.[3] Tr. 40. Nevertheless, where, as here, "it is

---

[3] However, the attorney's concession in this regard was not entirely clear because

obvious that the record did not contain all the relevant medical records," the ALJ cannot reasonably rely on the claimant's (or his attorney's) statement to the contrary.  *See Cox v. Apfel*, 160 F.3d 1203, 1209–10 (8th Cir. 1998) (rejecting the proposition that the ALJ was entitled to rely on an attorney's statement that the record was complete where a provider indicated by letter that the claimant had been treated for more than a year but there were no records in the case file reflecting such treatment).  The cases relied upon by the Commissioner are easily distinguishable as, in many of these cases, there was no indication that relevant medical records were missing, or the substance of the missing information was provided in other forms.  *See, e.g.*, *see Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013) (holding where there was no indication of missing records that the ALJ need not have ordered additional testing); *Onstad*, 999 F.2d at 1234 (noting that while results of psychological testing were not included in the record, an expert's summary of that testing was).

---

some portions of the exchange were inaudible, as reflected in the following:

> ALJ: Thank you.  And Mr. Fox, there was a number of things listed on the evidence letter.  What's still outstanding –
> Atty: I believe –
> ALJ: -- if anything?
> Atty: -- the record is complete.
> ALJ: Okay.
> Atty: We've got the (INAUDIBLE) record from Places for People and from therapists –
> ALJ: Yes.
> Atty: -- Ms. Lewbart (PHONETIC).  So I think we're good.

Tr. 40.

In sum, by failing to obtain the missing records, the ALJ issued a decision based on a record known to be incomplete and, therefore, not supported by substantial evidence. In such cases, the appropriate remedy is to reverse and remand the case to give the ALJ an opportunity to more fully develop the record.  *See Cox v. Apfel*, 160 F.3d at 1210.

**Remaining Arguments**

In light of the Court's remand for the ALJ to further develop the record, the ALJ should also reevaluate the medical opinion evidence and Plaintiff's RFC.  Although the ALJ may ultimately come to the same conclusion that Plaintiff is not disabled,[4] such a conclusion would be better supported after the ALJ has attempted to obtain a more complete set of treatment records.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner in denying benefits is **REVERSED** and the action is **REMANDED** for further proceedings consistent with the above.

A separate Judgment shall accompany this Memorandum and Order.

AUDREY G. FLEISSIG  
UNITED STATES DISTRICT JUDGE

Dated on this 6th day of May, 2024.

---

[4] For example, factors such as Plaintiff's reports of improvement on medication and a finding of malingering may still lend support for more moderate mental limitations.